**Not for publication. This opinion has limited precedential value.**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

In re

ANDREW SCOTT GRANOFF

Case No. 3:17-bk-30295-SHB
Chapter 7

Debtor

## MEMORANDUM OPINION

**APPEARANCES**:  LACY, PRICE & WAGNER, P.C.
   W. Allen McDonald, Esq.
   249 N. Peters Road, Suite 101
   Knoxville, Tennessee 37923
   Attorneys for Debtor

   MOORE & BROOKS
   Brenda G. Brooks, Esq.
   6223 Highland Place Way, Suite 102
   Knoxville, Tennessee 37919
   Attorneys for W. Grey Steed, Chapter 7 Trustee

   WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC
   M. Aaron Spencer, Esq.
   Post Office Box 900
   Knoxville, Tennessee 37901
   Attorneys for Cheryl Jones, a Personal Representative of the Estate of
   David Jones and as Trustee of the David L. Jones 2006 Revocable Trust

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the Motion to Compromise State Court Action filed by W. Grey Steed, Chapter 7 Trustee ("Motion to Compromise") [Doc. 36] and the Objection by Debtor to Proposed Settlement [Doc. 38].  The Chapter 7 Trustee seeks to compromise a postpetition lawsuit filed on July 5, 2018, in the Chancery Court for Jefferson County, Tennessee, styled as Andrew S. Granoff v. Cheryl Jones, as Personal Representative of the Estate of David Jones and as Trustee of the David L. Jones 2006 Revocable Trust (the "Jones Estate"), case number 18-cv-96 (the "State Court Complaint").  Following several preliminary skirmishes between the parties, the Court set this contested matter for trial for October 26, 2020, and set deadlines for the parties to file summary judgment motions as well as responses thereto and motions to strike and responses thereto (which were anticipated because the Court determined that the Tennessee Dead Man's statute likely is implicated). [Doc. 86.]   In addition to the Motion to Compromise, presently pending before the Court are the following motions:

- Motion for Summary Judgment by the Estate of David Jones and the David L. Jones 2006 Revocable Trust and related filings in support ("Jones Estate's Motion for Summary Judgment") [Docs. 91, 92, 93, 101, 104];

- Motion for Summary Judgment filed by the Chapter 7 Trustee, as amended, and related filings in support ("Chapter 7 Trustee's Motion for Summary Judgment") [Docs. 94, 95, 96];

- Debtor's Motion for Summary Judgment and related filings in support ("Debtor's Motion for Summary Judgment") [Docs. 97, 98, 99, 100];

- Motion to Strike by the Estate of David Jones and the David L. Jones 2006 Revocable Trust and related filing in support ("Jones Estate's First Motion to Strike") [Docs. 102, 103];

- Debtor's Motion to Strike Declarations of Elizabeth Jones [Doc. 91-12] and Johnny Herndon [Doc. 91-14] ("Debtor's Motion to Strike") [Doc. 111]; and

- Motion to Strike Debtor's Supplemental Declaration [Doc. 116] by the Estate of David Jones and the David L. Jones 2006 Revocable Trust and related filing in support ("Jones Estate's Second Motion to Strike") [Docs. 119, 120].

Debtor opposes the Chapter 7 Trustee's Motion for Summary Judgment and the Jones Estate's Motion for Summary Judgment [Doc. 115], the Jones Estate's First Motion to Strike [Doc. 117], and the Jones Estate's Second Motion to Strike [Doc. 122]. The Jones Estate supports the Chapter 7 Trustee's Motion for Summary Judgment [Doc. 107] and opposes Debtor's Motion for Summary Judgment [Doc. 109] and Debtor's Motion to Strike [Doc. 121]. The Chapter 7 Trustee responded to the Debtor's Statement of Undisputed Material Facts [Doc. 108] but did not file a legal brief in opposition, apparently choosing to stand on his own motion.

Indeed, assuming that all of the related filings have been reduced to paper, much ink has been spilled over this contested matter, with the parties filing more than 1,500 pages in connection with the initial motion and objection, three motions for summary judgment, and three motions to strike (not including other related motions already decided by the Court). After attempting to digest these voluminous filings, the Court concludes that this matter is much more simple than the filings suggest. The Court need answer only two questions:[1] (1) is the asset related to the State Court Complaint[2] property of the estate under 11 U.S.C. § 541 and (2) if so, is the compromise proposed by the Chapter 7 Trustee fair and equitable under Federal Rule of Bankruptcy Procedure 9019?

---

[1] Because the Court finds that Debtor's own assertions lead to the legal conclusion adverse to Debtor that the asset at issue in the State Court Complaint is property of the bankruptcy estate under § 541 and because the testimony sought to be stricken does not impact the Rule 9019 analysis, the Court need not reach the issues raised by the motions to strike and will deny them as moot.

[2] The asset at issue is real property located at 390, 392, and 394 Highway 113, White Pine, Tennessee (the "Property"). [Doc. 98 at ¶ 1.]

# I. LEGAL STANDARDS AT ISSUE

## A. Property of the Estate

Debtor correctly asserts that "[t]he question before the Court is who owns the State Court [Complaint], not 'whether the claim has merit.'" [Doc. 99 at p. 2 n.3 (quoting *Holstein v. Knopfler (In re Holstein)*, 321 B.R. 229, 238 n.3 (Bankr. N.D. Ill. 2005) and citing *Alipour v. Thomas (In re Alipour)*, 252 B.R. 230, 235 (Bankr. M.D. Fla. 2000) (noting that decision about whether legal malpractice claim was property of the bankruptcy estate "in no way" amounted to a decision on the merits of the claim)).] The threshold question here is whether the asset at issue in the State Court Complaint (the Property) is property of the bankruptcy estate.

As explained in *In re Davis*, 589 B.R. 146, 148-49 (Bankr. E.D. Tenn. 2018):

> The commencement of a bankruptcy estate "creates an estate . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The main thrust of [§ 541] . . . is to secure for creditors everything of value the [debtor] may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966). To constitute property of the debtor at the time the petition is filed and so to come into the bankruptcy estate at that time, a right must be "sufficiently rooted in the pre-bankruptcy past and so little entangled with the [debtor's] ability to make an unencumbered fresh start that it should be regarded as 'property' under [what is now § 541]." *Id.* at 380.

*Davis* concerned whether a cause of action in a multidistrict, tort class action was property of the estate. Here, although the Chapter 7 Trustee asks to settle a lawsuit, the asset in question is not the cause of action but Debtor's interest in a partnership.

The question, then, is whether the partnership existed prepetition. The burden of proof concerning whether the asset at issue is property of the estate belongs to the Chapter 7 Trustee, who must meet his burden by a preponderance of the evidence. *See Harris v. Nelson (In re*

*Dunn)*, 436 B.R. 744, 747 (Bankr. M.D. Ga. 2010) (citing *Schaffer v. Weast*, 546 U.S. 49, 56 (2005); *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

### B. Rule 9019 Standard

If the Chapter 7 Trustee meets his burden to prove that the asset at issue is property of the estate, the Court then must determine whether the proposed compromise is fair and equitable and in the best interest of the estate. *See In re High Tech Packaging, Inc.*, 397 B.R. 369, 371 (Bankr. N.D. Ohio 2008). This determination lies "within the sound discretion of the bankruptcy judge," *In re W. Pointe Props., L.P.*, 249 B.R. 273, 282 (Bankr. E.D. Tenn. 2000), with the Chapter 7 Trustee bearing the burden of persuasion, although "the judgment of the trustee deserves some deference." *In re Boone*, No. 3:18-bk-30150-SHB, 2018 WL 5885451, at *4 (Bankr. E.D. Tenn. Nov. 6, 2018) (quoting *In re W. Pointe Props., L.P.*, 249 B.R. at 281, and citing *In re Boddie*, 569 B.R. 297, 303 (Bankr. S.D. Ohio 2017)).

As this Court recently explained:

> To assess the fairness and equity of the proposed compromise, courts generally weigh the following factors:
>
>> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience[,] and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views.
>
> *In re Boddie*, 569 B.R. at 302 (quoting *Fishell v. Soltow (In re Fishell)*, 47 F.3d 1168, 1995 WL 66622 at *3 (6th Cir. Feb. 16, 1995)). "'[W]hen assessing a compromise, courts need not rule upon disputed facts and questions of law, but only canvass the issue[s].'" *Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (quoting *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)).

*In re Boone*, 2018 WL 5885451, at *3.

Of particular importance here given the voluminous filings and issues raised, "[i]n evaluating a Rule 9019 settlement, a bankruptcy court need not 'conduct a mini-trial to

determine the probable outcome of any claims waived in the settlement.' Rather, the bankruptcy court must 'apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision.'" *Id.* (quoting *Official Comm. of Unsecured Creditors v. Moeller (In re Age Refining, Inc.)*, 801 F.3d 530, 541 (5th Cir. 2015) (quoting *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997))). The Court's duty is to review the issues and "see whether the settlement 'fall[s] below the lowest point in the range of reasonableness[,]'" and "[t]he Court 'need not be convinced that the settlement is the best possible compromise. The Court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness.'" *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014) (quoting *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008)).

## II. ANALYSIS

### A. Property of the Estate

Debtor describes his relationship with David Jones as a partnership. [Doc. 98-1 at ¶ 34.] He, however, asserts that a partnership did not arise between them until after Debtor filed his Chapter 7 bankruptcy petition. [*Id.* at ¶¶ 26, 34.] Debtor explains that he did not schedule any legal or equitable interest in the Property "because [he] did not believe that Mr. Jones' promise to [him] was a valid property interest since it was not in writing." [*Id.* at ¶ 20.]

The Tennessee Supreme Court explained how an implied partnership arises:

> In Tennessee, a partnership is defined as an association of two or more persons to carry on as co-owners a business for profit, Tenn. Code Ann. § 61–1–105(a), and the receipt of a share of the profits of that business is prima facie evidence that a partnership exists, Tenn. Code Ann. § 61–1–106(4). In determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant

  facts, actions, and conduct of the parties. *Roberts v. Lebanon Appliance Serv. Co.*, 779 S.W.2d 793, 795 (Tenn. 1989). If the parties' business brings them within the scope of a joint business undertaking for mutual profit—that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them—the result is a partnership whether or not the parties understood that it would be so. *Pritchett v. Thomas Plater & Co.*, 232 S.W. 961, 969–70 (Tenn. 1921).

  Moreover, the existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties. *Wyatt v. Brown*, 281 S.W.2d 64, 67 (Tenn. Ct. App. 1955). Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties actually intend to become partners. *Wyatt*, 281 S.W.2d at 67. The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts. *Roberts*, 779 S.W.2d at 795–96. It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship. *Wyatt*, 281 S.W.2d at 67. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

*Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991) (footnote omitted).

Debtor is incorrect in his analysis of when the purported partnership with Mr. Jones was created. Applying Tennessee law on partnerships, the Court finds that to the extent a partnership actually existed at any time between Debtor and Mr. Jones, the following facts – taken directly from Debtor's own testimony and the allegations of his State Court Complaint[3] – establish for purposes of this contested matter that an implied partnership was created at least by December 22, 2016, and that the post-petition decision between the partners to offer the property for sell was merely a change in the partnership agreement, not the initiation of the partnership.

Debtor alleged in his State Court Complaint the following, in pertinent part, concerning his and Mr. Jones's prepetition dealings:

---

[3] Because the Court takes as true the facts recited by Debtor, which facts result in a decision adverse to Debtor, the Court need not undertake the typical summary judgment analysis of evaluating undisputed material facts.

>       12.  After [*Debtor*] failed to make payments on the loan taken out by his ex-wife, in 2015, [Debtor] approached Mr. Jones . . . regarding a *business proposition* for Mr. Jones to purchase the promissory note and deed of trust on the Property.
>
>       . . . .
>
>       16.  In order to protect *their relative business interests in the Property*, [Debtor] and Mr. Jones determined that Mr. Jones should initiate foreclosure proceedings in order to obtain title to the Property free and clear of any other liens or encumbrances.
>
>       17.  The foreclosure sale occurred on January 19, 2017.  At the foreclosure sale, Mr. Jones purchased the Property for the sum of $517,529.78. . . .
>
>       18.  Mr. Jones and Defendant Cheryl Jones borrowed $439,000 against the Property and executed a promissory note and deed of trust in favor of the lender, SmartBank. . . .  The borrowed funds were used to make the agreed payment to [Debtor's] ex-wife in the amount of $420,000, with the remainder being used for repairs to the Property.
>
>       19.  The foreclosure sale was in no way adversarial between Mr. Jones and [Debtor].  To the contrary, *the sale was agreed to and organized by both of them*.  [Debtor] cooperated fully in the foreclosure with the understanding and expectation that [Debtor] would be able to obtain financing to enable him to purchase the Property back from Mr. Jones.

[Doc. 36-2 (emphasis added).]

Debtor further explained in filings with this Court that his cooperation in the foreclosure included "not interfer[ing] with Mr. Jones postponing the [foreclosure] sale to ensure [Mr. Jones] bought the property" because "it was in [Debtor's] best interest for Mr. Jones to foreclose and buy the Property." [Doc. 98-1 at ¶ 17.]  Indeed, Debtor agreed to a Waiver and Release on December 22, 2016, thereby expressly relinquishing his right for any excess proceeds from the foreclosure sale to be paid into the registry of the divorce court for division by Debtor and his ex-wife. [Doc. 38-1.]  In so doing, and in conjunction with Debtor's cooperation with the foreclosure and its "multiple" postponements [Doc. 98-1 at ¶ 17] so that Mr. Jones could be assured of winning the foreclosure bid, Debtor contributed to the implied partnership his legal

and equitable interests in any excess proceeds to which Debtor might have been entitled from the foreclosure sale. [*See* Doc. 38 at ¶ 2 ("There were no excess funds [from the foreclosure], and furthermore, the Debtor had already released any rights to excess funds in waivers . . . .").] Debtor acknowledges that the agreement with Mr. Jones was that Debtor would purchase the Property from Mr. Jones by paying him the amount of Mr. Jones's investment plus $100,000.00, with Debtor claiming that the Property was valued at $500,000.00 more than Mr. Jones's investment [Doc. 36-2 at ¶ 35]. Also, as explained by Debtor, "David Jones agreed that in order for [Debtor] to purchase the Property back from him after foreclosure, [Debtor] had to file bankruptcy." [Doc. 98-1 at ¶ 16.]

In the State Court Complaint, Debtor also characterized other prepetition conduct as supportive of his allegation of an implied partnership: "Other third parties witnessed that [Debtor] and Mr. Jones *were at all times cooperating with each other regarding all aspects of the Property*, including Mr. Jones's initial purchase of the promissory note and deed of trust from Browning Capital and the foreclosure of the Property." [Doc. 36-2 at ¶ 24 (emphasis added).] That the plan for the partnership property changed postpetition – from Debtor obtaining financing to purchase the Property from Mr. Jones at a profit to Mr. Jones, with Debtor possessing immediate equity, to the sale of the Property for Mr. Jones and Debtor to split the profit – does not invalidate the fully formed prepetition implied partnership.

Debtor argues that the asset sought to be settled by the Chapter 7 Trustee is not property of the estate because the *breach* of the partnership agreement (which, of course, Debtor asserts did not exist until postpetition) created the causes of action that Debtor asserts in the State Court Complaint and that breach occurred postpetition. Specifically, Debtor characterizes the prepetition circumstances as follows:

> [P]rior to Debtor's bankruptcy, Debtor had no legal or equitable interest in the Property. Mr. Jones had merely promised to sell the Property – which Mr. Jones had purchased at a foreclosure sale he initiated – for $100,000 more than Mr. Jones had invested in the Property. This promise was not in writing and was not supported by any consideration. Thus, Mr. Jones' verbal promise was unenforceable under Tennessee law.

[Doc. 99 at p. 3.] Debtor then argues that "even if the verbal promise was legally enforceable,[4] the State Court Action . . . is based on an alleged partnership to sell the Property, and the partnership did not exist on the date Debtor filed bankruptcy." [*Id.*] Finally, Debtor asserts that he had not suffered any damages relating to Mr. Jones's promise or the partnership. [*Id.*]

Debtor misunderstands the legal implications of his prepetition arrangement with Mr. Jones. It matters not whether Mr. Jones and Debtor described their prepetition arrangement as a partnership. Debtor's various assertions quoted above establish, for purposes of this contested matter, that Debtor and Mr. Jones "inten[ded] to do the things which constitute a partnership . . . regardless if it [wa]s their purpose to create or avoid the relationship"[5] – or more accurately here, to avoid the *appearance* of the relationship given Debtor's and Mr. Jones's plan for Debtor to file bankruptcy, after which Debtor would purchase the Property and immediately come into postpetition possession of an asset in which Debtor's equity would be $250,000.00 (*see* Doc. 36-2 at ¶ 35].

The Court finds that Debtor's interest in the implied partnership, the sole asset of which was the Property, is a prepetition interest that is property of the estate under § 541.[6]

---

[4] To the extent that the Statute of Frauds might preclude the establishment of a partnership in which the sole asset is real property titled in the name of only one of the partners, the Jones Estate certainly has a right to waive the defense to settle the State Court Complaint, even if the affirmative defense was raised in the state court.

[5] *Bass*, 814 S.W.2d at 41.

[6] Although the Chapter 7 Trustee filed his report of no distribution on March 21, 2017, because Debtor failed to schedule the partnership asset at issue, it was not abandoned. 11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."); *see also In re Wright*, 566 B.R. 457, 463 (B.A.P. 6th Cir. 2017) ("In other words, if a debtor fails to

**B. Rule 9019 Compromise**

The Chapter 7 Trustee seeks authority to settle the State Court Complaint for payment by the Jones Estate of $35,000.00 for the benefit of the bankruptcy estate. The Jones Estate's Motion for Summary Judgment argues summarily that because the asset was not abandoned, "the [Chapter 7] Trustee has the authority to compromise the [l]awsuit, and for this reason, the [Chapter 7] Trustee's Motion to Compromise should be granted." [Doc. 92 at p. 33.] Similarly, the Chapter 7 Trustee's Motion for Summary Judgment merely asserts that the unabandoned asset "may be now administered by the Estate." [Doc. 95 at p.1.]

The Chapter 7 Trustee's Motion to Compromise provided a bit more argument on whether the proposed settlement meets the test under Rule 9019:

> The Trustee and Ms. Jones, both by and through counsel, have agreed to compromise the State Court Action as a full and final settlement of any and all claims and counterclaims involving the Real Property for a payment of $35,000.00 by Ms. Jones to the Trustee for the benefit of the bankruptcy estate. Ms. Jones denies all the claims and allegations in the State Court Action. The parties have agreed to bear their own attorney's fees and costs. The Trustee believes that this settlement is appropriate and in the best interest of the estate given the nature of the claims and potential counterclaims and defenses that could be asserted by the defendant counter-plaintiff, Ms. Jones, in the State Court Action. Further, there will be a significant cost saving to the bankruptcy estate by not having to pursue the litigation of the State Court Action.

[Doc. 36 at ¶ 16.]

Debtor's initial objection to the Motion to Compromise and Debtor's opposition to the Jones Estate's and Chapter 7 Trustee's Motions for Summary Judgment focused solely on the argument that the Chapter 7 Trustee lacks authority to compromise a postpetition asset. Thus,

---

schedule property, it is not abandoned upon closure of the case, but remains property of the estate." (citing *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991); *In re Haralambous*, 257 B.R. 697, 699 (Bankr. D. Conn. 2001))).

Debtor has not raised any argument that the $35,000.00 settlement proposal is not fair and equitable or in the best interest of the bankruptcy estate.

Debtor sought recovery of $250,000.00 in the State Court Complaint. [Doc. 36-2 at ¶ 35, p. 10 ¶ 7.] The Jones Estate filed an Amended Answer and Counterclaim in response to the State Court Complaint, asserting claims for statutory and common-law inducement to breach of contract and intentional interference with business relationships and seeking $800,000.00 in damages against Debtor. [Doc. 112-2 at pp. 13-22.]

Although not argued by Debtor, the Court undertakes the Rule 9019 analysis and finds that the factors at issue here are "the complexity of the litigation involved, and the expense, inconvenience[,] and delay necessarily attending it and . . . the paramount interest of the creditors and a proper deference to their reasonable views." *In re Boone*, 2018 WL 5885451, at *3 (quoting *In re Boddie*, 569 B.R. at 302). Given the complexities of the underlying issues (as evidenced in part by the more than 1,500 pages of filings relating to the six motions pending before this Court), and the expense that the Chapter 7 Trustee would likely incur to litigate the issues, as well as the potential that any amount awarded to the Chapter 7 Trustee might be offset by an amount awarded to the Jones Estate on its counterclaims, the Court finds that the proposed compromise is fair and equitable and in the best interest of the bankruptcy estate.

### III. CONCLUSION

Because the Court finds that the Property was an asset of a prepetition partnership that became property of the estate when Debtor filed his Chapter 7 petition, and because the Court finds that the compromise proposed by the Chapter 7 Trustee is fair and equitable and in the best interest of the bankruptcy estate, the Court will grant the Chapter 7 Trustee's Motion for Summary Judgment and the Jones Estate's Motion for Summary Judgment and deny Debtor's

Motion for Summary Judgment. An order consistent with this Memorandum Opinion will be entered.

FILED: August 13, 2020

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE